537 A.2d 883

COMMONWEALTH of Pennsylvania, Appellee,

v.

Thomas McEACHIN, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 5, 1987.

Decided Feb. 11, 1988.

---

190

Thomas J. Turner, III, Philadelphia, for appellant.

Deborah Fleisher, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and OLSZEWSKI and JOHNSON, JJ.

OLSZEWSKI, Judge:

This is an appeal from a judgment of sentence entered after appellant's conviction by jury of two counts of involuntary deviate sexual intercourse and three counts of corrupting the morals of a minor child. Appellant complains on appeal that: (1) the trial court erred in finding child witnesses competent to testify; (2) the trial court erred in permitting repeated re-examination of one child witness and counsel was ineffective for failing to object; (3) the trial court erred in denying appellant's motions for a mistrial; (4) the trial court erred in permitting testimony as to prior consonant statements of two children and trial counsel was ineffective for failing to object; and (5) the trial court erred in not permitting evidence of prior inconsistent statements by two child witnesses.[1] We find appellant's claims to lack merit and, accordingly, we affirm the order of the trial court.

Evidence presented at trial established that between late 1985 and early 1986, appellant, while employed as a maintenance worker at a day school in Philadelphia, sexually molested three[2] pre-school aged children. With each victim, appellant pretended to play various children's games

---

1. We note that appellant's brief is ninety-six pages long, well in excess of the fifty-page limit imposed by Pa.R.A.P. 2135. Pursuant to Pa.R. A.P. 2101, it is within our discretion to quash appeals when defects in the brief are substantial. *Commonwealth v. Drew,* 353 Pa.Super. 632, 510 A.2d 1244 (1986). We will not quash the instant appeal since the brief is not so defective as to preclude effective appellate review.

2. A fourth victim was declared incompetent to testify and a demurrer was sustained as to this charge at the close of the Commonwealth's case.

which culminated in his penis being placed in each child's mouth and/or rectal or genital area.

After conviction, post-trial motions were filed and denied. The trial court sentenced appellant to six to twenty-four years plus five years probation. This appeal followed.

Appellant first maintains that the trial court erred in finding the complainant children competent to testify. At the time of trial, the victims, R.J. E.J., and K.H., were aged five, five, and three and one-half, respectively. When evaluating the competency of children to testify, we are guided by the following principles:

> A witness is presumed competent to testify unless proven otherwise. *Commonwealth v. Riley*, 458 Pa. 390, 326 A.2d 384 (1974). When a proposed witness is under fourteen years of age, however, there must be a searching judicial inquiry as to mental capacity. *Commonwealth v. Short*, 278 Pa.Super. 581, 420 A.2d 694 (1980). This inquiry will probe the capacity to communicate, observe and remember, and a consciousness of the duty to speak the truth in proportion to the witness's chronological immaturity. *Rosche v. McCoy*, 397 Pa. 615, 156 A.2d 307 (1959).... [T]he judge holds the superior opportunity to evaluate the competency of a proposed child witness.... *Commonwealth v. Bailey*, 322 Pa.Super. 249, 469 A.2d 604 (1983).

*Commonwealth v. Stohr*, 361 Pa.Super. 293, 522 A.2d 589 (1987).

Our Supreme Court has mandated that in evaluating competency, the trial court must be satisfied that the witness has:

> "(1) such capacity to communicate, including as it does both an ability to understand questions and to frame express and intelligent answers; (2) mental capacity to observe the occurrence itself and the capacity of remembering *what it is* that [the witness] is called to testify about; and (3) a consciousness of the duty to speak the truth."

*Rosche v. McCoy,* 397 Pa. 615, 620, 156 A.2d 307, 310 (1959) (emphasis in original). *See also Commonwealth v. Baker,* 466 Pa. 479, 485, 353 A.2d 454, 457 (1976).

*Commonwealth v. Hart,* 501 Pa. 174, 177, 460 A.2d 745, 747 (1983). Determination of competency will not be disturbed on appeal absent a clear abuse of discretion. *Id.*

■ Instantly, the trial court made the following observations regarding the competency of the three children: each knew his/her name, age and where he/she went to school; each could distinguish colors; each articulated why he/she was in the courtroom; and each knew the difference between the truth and a lie and the consequences of telling a lie. In conclusion, the trial court stated:

> Although the witnesses sometimes gave inconsistent answers and occasionally gave answers which could not possibly be correct, on the whole they demonstrated consistently that they knew the concept of truth, that they could understand the questions and that they could give intelligent, relevant answers. This was in contrast to the witness the Court found incompetent who, when asked a very concrete question about the weather that day, indicated that it was snowing (not a correct answer). Under the circumstances of this case, this Court did not commit error in finding witnesses [K.W.], [E.J.] and [R.J.] to be competent.

Opinion at 6.

The trial court's inquiry, therefore, reflects a careful and guided determination as to whether each child was competent to testify. We find no abuse of discretion by the trial court.

Appellant next contends that the trial court erred in permitting the Commonwealth to re-question K.H. and in acting favorably towards the child. We note that appellant has preserved the issue of re-questioning the witness by objecting on the record and, therefore, we need not address the ineffectiveness alternative in this regard. Because appellant's specific objection was that the question was "asked and answered," however, appellant's assertion on

appeal that the trial court's behavior towards K.H. improperly influenced the jury is waived. *See Commonwealth v. Berry,* 355 Pa.Super. 243, 255–56, 513 A.2d 410, 416 (1986). Nonetheless, because appellant has cloaked this issue in an ineffectiveness assistance of counsel claim, we are constrained to address it. *See infra.*

Regarding the re-questioning of a witness, we adhere to the following principles:

> The trial judges of this Commonwealth exercise broad powers while presiding at the trial of cases assigned to them. These powers include ruling on the admission or exclusion of evidence and controlling the scope of examination and cross-examination of witnesses. Such matters are committed to the sound discretion of the trial judge. *Commonwealth v. Niemetz,* 282 Pa.Super. 431, 422 A.2d 1369 (1980).

*Commonwealth v. Pittman,* 320 Pa.Super. 166, 172–73, 466 A.2d 1370, 1373 (1983).

■ In the instant case, the trial court admitted that the child was re-questioned. The court noted, however, that the requestioning was warranted because the child was tired. Opinion at 11. The court further observed that the child appeared intimidated by the jury. *Id.* The witness, nonetheless, indicated that she had something to tell the judge. In the interest of arriving at the truth, the trial court's control of the examination was not an abuse of discretion.

Appellant's counsel claims his own ineffectiveness for failing to preserve a challenge to the trial court's favorable treatment of K.H. Our Supreme Court has recently mandated:

> When appellate counsel asserts a claim of his or her own ineffective assistance of counsel on direct appeal, the case should be remanded for the appointment of new counsel *except* (1) where, it is clear from the record that counsel was ineffective or (2) where it is clear from the record that the ineffectiveness claim is meritless.

*Commonwealth v. McBee*, 513 Pa. 255, 261, 520 A.2d 10, 13 (1986) (emphasis in original).[3] We find that appellant's claim is meritless and, therefore, need not remand for the appointment of new counsel.

■ When determining whether counsel rendered ineffective assistance, we must determine, first, whether the underlying claim has arguable merit. Only if the claim is determined to be of arguable merit do we inquire as to the reasonableness of counsel's action or inaction. Finally, appellant must have been prejudiced by counsel's performance such that the trial outcome would likely have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Commonwealth v. Griffin*, 357 Pa.Super. 308, 515 A.2d 1382 (1986).

■ Instantly, counsel's allegations concerning his performance do not surmount the arguable merit hurdle. There was simply no impropriety by the trial court to which counsel should have objected. Scrutiny of the record indicates that the trial court did not display its opinion as to the credibility of K.H. nor did the court question the witness in a way which reflects bias. As the court indicated, it was merely concerned with the comfort of the three and one-half year old victim:

> In the instant case, this Court did not question the witness or in any way indicate an opinion as to the guilt or innocence of the defendant or the truth or untruth of witness' testimony.... This Court merely stated to the witness, after the district attorney elicited that the witness was tired, "Would you like to go and have lunch now and come back later" to which the witness answered, "Yes" and the Court stated, "All right you can do that, dear, you can step down and go with your Grandmom". This remark may show some appropriate solicitousness for the witness' well being but certainly does not indicate

---

**3.** We emphasize, however, that appellate courts in Pennsylvania have long suspected the possibility of "built-in" ineffective assistance by clever counsel. *Commonwealth v. Crowley*, 502 Pa. 393, 404, 466 A.2d 1009, 1015 (1983), and have looked with disfavor on trial counsel's raising his own ineffectiveness. *See Commonwealth v. Lobel*, 514 Pa. 163, 523 A.2d 304 (1987).

any opinion by the Court as to the truthfulness or untruthfulness of the witness' testimony. Later on that day, after the witnss [sic] had been on the stand for some period of time, the witness indicated to the assistant district attorney that she was tired. After a sidebar conference requested by the district attorney the Court merely said, "[K.H.] you can step down now, you can go home with Daddy. All right?" It is difficult to see how this comment can be interpreted as expressing an opinion of the Court to either the witness or the jury concerning anything about the witness' testimony. The defense also complains that the court displayed solicitude during the witness' testimony for her, "fatigue, comfort and the number of people watching her" citing N.T. 193–4. As the Notes of Testimony indicate, this Court merely asked the witness if she would rather sit on her father's lap and then asked defense counsel if he had any objection to the witness sitting on her father's lap to which he replied, "No". This Court also indicted to the witness that she should speak into the microphone and that if she did not want to look at the jury she could just look at counsel or at the Court and talk into the microphone. These actions and statements by the Court were totally within the bounds of propriety and did not prejudice the defendant in any way.

Opinion at 8–9.

In light of the foregoing, we find appellant's ineffective assistance claim to be meritless.

■ Next, appellant maintains that the trial court erred in not granting appellant's motions for mistrial made after two witnesses testified concerning the arrest of appellant for sexually assaulting D.R. First, appellant protests the following testimony of Officer Tufo elicited during the Commonwealth's case in chief:

Q. And in regards to [D.R.], did you also show him photographs, including the photograph of the defendant?

A. Yes, ma'am.

Q. And did you also take with you and use when you spoke to [D.R.] the anatomically correct dolls?

A. Yes, ma'am, I did.

Q. Detective, as a result of that interview, did you obtain any arrest warrants?

A. Yes, ma'am.

Mr. Turner: Objection.

The Court: I'm going to sustain the objection and ask that the jury disregard that answer.

Ms. Muldrow: Now, Detective, as part of your investigation then you obtained warrants as far as [K.H.], as far as [R.J.] and as far as [E.J.], and as far as [D.R.]; is that correct?

Mr. Turner: Objection.

The Court: Objection sustained. May I see counsel at sidebar, please.

Trial transcript at 400–401.

At a subsequent proceeding in chambers, the Commonwealth indicated that they did not have any substantive evidence regarding the D.R. charge. The trial court declared, therefore, that it would not permit testimony that an arrest warrant was obtained and that charges were brought on the basis of something done to D.R. The court then cautioned the jury:

> Members of the jury, I have sustained defense counsel's objection to the question asked by the Distric Attorney, and I am instructing you that you are to disregard anything that you may have heard about a warrant or [D.R.]. That's not part of this case and you are to totally disregard that. And if you have anything in your head about that, put that out of your mind. You are not to be concerned with this in anything that you have to do with this case. If there is anyone that doesn't understand what I just told them, please raise your hand and I will try to make it more clear. I see that no one raised their hand, therefore, everybody has understood my instructions.

Trial transcript at 406–407.

Second, appellant complains of comments made by D.R.'s mother who was called in rebuttal to testify that a teacher

at A.B. Day School had asked her to watch a classroom while she left for a few minutes. When questioned about this event, however, D.R.'s mother unexpectedly mentioned that her son had been molested. During an immediate conference in chambers, both counsel stated that the Commonwealth had not intentionally elicited the comment. Trial transcript at 692. The court then instructed the jury to

> ... totally disregard the last witness and anything that she said. Her testimony had nothing to do with this case. It is to be totally disregarded by all of you. Just forget that she was ever called to the witness stand. Nothing that she said is relevant here.

Trial transcript at 698.

Appellant contends that the comments by Officer Tufo and D.R.'s mother were so prejudicial that the trial court should have granted a mistrial. When evaluating whether the introduction of irrelevant evidence requires a new trial, we are guided by the following principles:

> Our review of the grant or denial of a new trial is limited to determining whether the trial court abused its discretion or committed an error of law. *Commonwealth v. White*, 482 Pa. 197, 393 A.2d 447 (1978).... As a general rule, evidence of crimes unrelated to the charge for which the defendant is being tried, is inadmissible.[4] *Commonwealth v. Martin*, 479 Pa. 63, 387 A.2d 835 (1978); *Commonwealth v. Turner*, 454 Pa. 439, 311 A.2d 899 (1973). There is no *per se* rule that requires a new trial for a defendant every time there is reference to prior criminal activity. *Commonwealth v. Heaton*, 504 Pa. 297, 472 A.2d 1068 (1984). "[W]e have never ascribed to the view that all improper references to prior criminal activities necessarily require the award of a new trial as the only effective remedy." *Commonwealth v. Williams*, 470 Pa. 172, 178, 368 A.2d 249, 252 (1977).... An immediate curative instruction to the jury may alleviate any harm to

4. We note that sexual crimes and nonsexual crimes must be treated alike in deciding whether evidence of prior criminal conduct should be admitted. *Commonwealth v. Green*, 290 Pa.Super. 76, 434 A.2d 137 (1981).

the defendant that results from reference to prior criminal conduct. [citations omitted] ... "[W]hether the exposure of the jury to improper evidence can be cured by an instruction depends upon a consideration of all the circumstances." *Commonwealth v. Richardson,* [496 Pa. 521, 526, 437 A.2d 1162, 1165 (1981)].

There are exceptions to this general rule. [E]vidence of other crimes is admissible when it tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial.... *Commonwealth v. Peterson,* 453 Pa. 187, 197–198, 307 A.2d 264, 269 (1973).... [We determine that the instant situation does not fall into any of the enumerated exceptions].

*Commonwealth v. Morris,* 513 Pa. 169, 175–77, 519 A.2d 374, 377 (1986)

We have further mandated that two considerations are particularly pertinent in determining potential prejudice: (1) the nature of the reference; and (2) whether the testimony was intentionally elicited by the prosecutor. *Commonwealth v. Satzberg,* 358 Pa.Super. 39, 49, 516 A.2d 758, 762 (1986) *citing Richardson, supra.* In the present case, it is apparent that the comments were not intentionally elicited; in fact, the court discovered that the Commonwealth had cautioned D.R.'s mother not to mention the incident or arrest.[5]

Additionally, the trial court thoroughly and immediately instructed the jury that the statements had nothing to do with the case and should be disregarded. Appellant is entitled to a fair trial, not a perfect one. *Morris, supra* 513 Pa. at 178, 519 A.2d at 378, *citing Bruton v. United States,*

5. Appellant asserts that the improper comments were elicited by the Commonwealth and this fact carries enough weight to mandate a new trial. We note, however, that only in extreme cases of repeated prosecutorial misconduct is a new trial required. *See Commonwealth v. Bricker,* 506 Pa. 571, 487 A.2d 346 (1985).

391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). We have reviewed the circumstances and conclude that any prejudice to appellant because of the reference to the arrest was effectively neutralized by the cautionary instruction to the jury. The trial court did not abuse its discretion in denying the motion for a mistrial.

Appellant next challenges the introduction or prior consonant statements of two of the victims. First, appellant claims that the court erred in permitting R.J.'s mother to testify as to statements made by R.J. between four to eight hours after one incident. The trial court admitted the mother's statements as *res gestae* under the excited utterance exception to the hearsay rule.

> To qualify as an excited utterance, a statement must be: "A spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of having emanated in whole or in part from his reflective faculties."

*Commonwealth v. Stohr, supra* 361 Pa.Super. at 297, 522 A.2d at 592, *quoting Allen v. Mack,* 345 Pa. 407, 410, 28 A.2d 783, 784 (1942).

A time lapse between an assault and the statement does not necessarily negate the indicia of reliability which underlies the *res gestae* rule. *Commonwealth v. Bailey,* 353 Pa.Super. 390, 510 A.2d 367 (1986) (plurality). The requirements of spontaneity is a question which turns on the circumstances of each case and is relaxed when the child declarant is the victim of a sexual assault. *Commonwealth v. Stohr, supra* 361 Pa.Super. at 298, 522 A.2d at 592. We noted in *Stohr:*

> "Such a relaxation of the rule recognizes both the likelihood of a young child's inability to comprehend ... the assault and the possibility of the child's hesitancy to

discuss the matter for fear of incurring punishment."
*Commonwealth v. Pronkoskie,* [477 Pa. 132] at 142 n. 9,
383 A.2d [858] at 863 n. 9 [ (1978) ].

*Id.,* 361 Pa.Superior Ct. at 298, 522 A.2d at 592.

Instantly, the trial court opined:

[T]he sexual attack on [R.J.] occurred sometime between
the hours of 7:30 A.M. when he was dropped off at the
A.B. Day School and 4:30 P.M. when he was picked up by
his mother [A.J.]. She observed that he was visibly upset
and had been crying. At that time, R.J. refused to
discuss what was upsetting him. Later, at approximately
7:00 P.M. that evening he asked his mother if he could
take a bath; a very unusual occurrence. Upon being
asked why he wanted to do such an unusual thing, he
replied, "because the bumble bee stung me." His moth-
er, thinking that a real bumble bee had stung him,
continued to ask him questions about the sting. In
answer to her questions, he indicated that he had been
stung in the rectum. He kept insisting he wanted to take
a bath because he was dirty. In response to questions
about where it happened and what size the bumble bee
was he indicated that it happened in the bathroom and
that the bumble bee was, "tall, big like my daddy." He
also stated that the bumble bee stung him with his tail
which he further indicated was the penis. As he spoke
about the incident, he was visibly fearful and nervous.

Opinion at 15–16.

■ We have held that a six-hour delay is not enough to
cast doubt on the spontaneous nature of the statement as
*res gestae. Commonwealth v. Norwalk,* 160 Pa.Super. 88,
50 A.2d 115 (1946). As long as the statement was clearly a
product of overpowering emotion caused by a traumatic and
humiliating experience, an even greater delay would not
preclude introduction. *Bailey, supra.* We find, therefore,
that the statements by the victim were sufficiently reliable
and were properly permitted as spontaneous declarations.[6]

---

**6.** We note that a number of courts and legislatures have created a
specific tender years exception to the hearsay rule to accommodate

■ Appellant also complains of the testimony by Officer Tufo and the victims' mothers as to other prior consonant statements of the victims. The record reflects that counsel's request for a continuing objection as to such questions was denied and counsel failed to subsequently object to the challenged testimony. The issues are, therefore, not preserved for our review.

Counsel, however, resurrects the claims by alleging once again his own ineffectiveness. We proceed according to the principles discussed *supra,* and again find the ineffectiveness claim to be meritless.

A careful reading of the record and applicable case law indicates that the statements not objected to were admissible as prior consonant statements offered to negate the inference by appellant that the victims' testimony was recently fabricated. *Commonwealth v. Clark,* 355 Pa.Super. 200, 512 A.2d 1282 (1986). We have stated that:

> Prior declarations of a witness which are consistent with his present testimony may be admitted to corroborate his testimony at trial if impugned, expressly or impliedly, as the product of recent fabrication, particularly when improper influence of the witness is implicated. *See Commonwealth v. Cruz,* 489 Pa. 559, 414 A.2d 1032 (1980). *Commonwealth v. Clark,* 355 Pa.Super. 200, 512 A.2d 1282 (1986). As noted in *Commonwealth v. Gore,* 262 Pa.Super. 540, 550, 396 A.2d 1302, 1307 (1978), "it is not necessary that the impeachment be explicit, i.e., that an

the need for the victim's testimony in child sexual abuse cases. *See, e.g.,* Ind.Code Ann. Sec. 35–37–4–6 (1984); Kan.Stat.Ann. Sec. 60–460(dd) (1982); *State v. McCafferty,* —— S.D. ——, 356 N.W.2d 159 (1984); *Bertrang v. State,* 50 Wis.2d 702, 184 N.W.2d 867 (1971). The Commonwealth of Pennsylvania General Assembly, on November 29, 1984, passed Bill 1361 that provided for the admission of out-of-court statements made by a child victim; however, due to an unrelated amendment, the Governor vetoed the Bill on December 26, 1984.

In light of the need for a child sexual abuse victim's testimony and the inadequacy of the spontaneous declaration exception in meeting that need, we have opined that the tender years exception to the hearsay rule should be adopted as the law of this Commonwealth. *Commonwealth v. Haber,* 351 Pa.Super. 79, 88, 505 A.2d 273, 278 (1986) (Olszewski, J., dissenting.). The tender years exception would have rendered the instant testimony admissible. *See id.*

actual allegation of recent fabrication be made, but only that a jury be able to reasonably infer that such is occurring." *See also Commonwealth v. Bailey,* 322 Pa. Super. 249, 469 A.2d 604 (1983); *Commonwealth v. Kjersgaard,* 276 Pa.Super. 368, 419 A.2d 502 (1980).
*Commonwealth v. Cain,* 358 Pa.Super. 198, 201–02, 516 A.2d 1252, 1254 (1986).

An examination of the record indicates that while appellant did not expressly assert fabrication, the following line of questions implies fabrication:

Q. You love your mommy don't you?

A. Yes.

Q. And you love your daddy, don't you?

A. Yes.

Q. And, [R.J.], when they tell you to do something you do it.

A. Yes.

Trial transcript at 178. In addition, appellant's counsel asked questions on cross-examination emphasizing that R.J. and E.J. had gone over their testimony numerous times before trial with the district attorney's office.

These areas of inquiry could cause a jury to infer that the recollection of the young victims was influenced by family and conviction-oriented individuals. *See Cain, supra,* 358 Pa.Superior Ct. at 202, 516 A.2d at 1254. Hence, the testimony of the victim's mothers and Officer Tufo relating what R.J. and E.J. had said was admissible to rebut an inference of fabrication. Therefore, appellant's claim of ineffectiveness for a failure to object to such testimony is meritless.

■ Finally, appellant contends that the trial court erred in refusing to permit appellant to read to the jury testimony of two of the victims from preliminary hearings. Appellant alleges that he was denied the right to confront witnesses with alleged prior inconsistent statements.

Regarding R.J., appellant contends that various parts of the boy's preliminary hearing testimony exemplified prior

inconsistent statements warranting admission for impeachment purposes. We have declared that:

> [M]ere dissimilarities or omissions in prior statements, even when the statements are the verbatim words of the victim, do not suffice as impeaching evidence; the dissimilarities or omissions must be substantial enough to cast doubt on a witness's testimony to be admissible as prior inconsistent statements. *See Commonwealth v. Gee*, 467 Pa. 123, 354 A.2d 875 (1976); *In re Silverberg*, 459 Pa. 107, 327 A.2d 106 (1974); *Commonwealth v. Ryan*, 253 Pa.Super. 92, 384 A.2d 1243 (1978); M. Greenberg & A. Bocchino, *Pennsylvania Evidence 88* (1983); G. Lilly, *An Introduction to the Law of Evidence* § 83 at 303 (1978).

*Commonwealth v. Bailey*, 322 Pa.Super. 249, 263, 469 A.2d 604, 611 (1983).

A perusal of the preliminary hearing transcript indicates that the trial court correctly assessed the child's negative answers therein as mere reluctance to testify rather than affirmative denials. We hold, accordingly, that the trial court did not err in refusing to permit the prior testimony.

Regarding the preliminary hearing testimony of E.J. which appellant sought to use for impeachment purposes, we first note that some of the testimony is relevant to the issue of competency only. Competency is a collateral issue and is not a matter for consideration by the jury at trial. *Bailey, supra.*

██ Appellant also sought to introduce prior statements which were omitted at trial. It is well settled that an omission is not the same as an inconsistency. *Commonwealth v. Hammond*, 308 Pa.Super. 139, 454 A.2d 60 (1982). The trial court properly exercised its discretion by not allowing cross-examination as to an omission. *Id.*, 308 Pa.Superior Ct. at 148, 454 A.2d at 64. None of appellant's remaining proffered preliminary hearing statements establish substantial inconsistencies such that they should have been permitted. *Bailey, supra.*

The judgment of sentence is affirmed.

CIRILLO, President Judge, dissents.

CIRILLO, President Judge, dissenting:

I disagree with the majority's assertion that the testimony of D.R.'s mother that her child had been molested resulted in no prejudice to McEachin because a curative instruction had been given by the trial judge. For this reason, I respectfully dissent.

In the instant case, the mother of a child whom the trial court had declared to be incompetent was to testify on rebuttal that she had taken over a teacher's classroom for a period of time. That teacher had testified that she had never left her classroom with anyone else, and that she had never allowed McEachin to accompany the children to the bathroom. Although the prosecutor did not intentionally elicit the response, the mother stated on direct examination that her child had been molested at the school. At that point, the trial judge called both counsel into his chambers, determined that the prosecutor did not ask intentionally for that response, and then issued an instruction to the jury that they were to disregard all of the testimony of that witness.

The decision to grant or deny a motion for mistrial is within the sound discretion of the trial court. Its decision will not be disturbed absent a manifest abuse of discretion. *Commonwealth v. Thomas*, 346 Pa.Super. 11, 17, 498 A.2d 1345, 1348 (1985). The majority holds that because the prosecution did not deliberately elicit the statement, and because the trial judge instructed the jury to disregard the statements of the mother, no prejudice inured to McEachin, and the trial court therefore did not abuse its discretion in refusing to grant a mistrial. Regardless of the fact that the prosecution did not elicit the testimony purposefully, or that an attempt was made by the trial court to give curative instructions, I would find that the prejudice that arose under the circumstances was too great to be cured by the instructions of the trial court.

The majority quotes *Commonwealth v. Morris*, 513 Pa. 169, 519 A.2d 374 (1986), at some length in setting out the standards by which we may measure the trial court's grant

or denial of a mistrial. While I agree that no *per se* rule exists which requires a new trial for a defendant every time a prior criminal offense is mentioned by a witness, and that an immediate curative instruction may remove the necessity for a new trial, *id.*, 513 Pa. at 176, 519 A.2d at 377, I do not find that to be the case here.

The supreme court in *Morris* recognized that whether the admission of improper evidence can be cured involves a consideration of all the circumstances under which the evidence has been offered. *Id.* (quoting *Commonwealth v. Richardson*, 496 Pa. 521, 526, 437 A.2d 1162, 1165 (1981)). In *Commonwealth v. Richardson, supra,* the supreme court held that "whether the admission of irrelevant evidence can be cured by an instruction to disregard it 'involves a consideration of the circumstances under which the irrelevant evidence was given and its probable effect on the jury.'" *Id.* (citations omitted). In *Richardson*, the court found that the remark made by a witness that the appellant had not been on the scene he burglarized in a case involving murder, burglary, and robbery it did not require a mistrial. The court held that a proper curative instruction had been given considering the nature of the reference, and that the remark was not intentionally elicited by the Commonwealth. *Id.* In *Morris*, the supreme court reached the same result, stating that "[p]ossession of a firearm without a permit is not the type of crime, the nature of which is likely to cause a jury to lose sight of the ultimate question before them— whether appellee shot the victim." *Morris*, 513 Pa. at 177, 519 A.2d at 378.

In cases where the crime is likely to cause the jury to lose sight of the ultimate question, however, a curative instruction would be ineffectual, and a mistrial should be granted. Where the evidence presented to the jury is unduly inflammatory, or where such evidence, if presented at trial, would so compromise the fact finder that it would be unable to remain impartial, a curative instruction cannot provide a defendant with a fair trial:

It should be noted that the nature of the improper reference is critical in a decision as to whether prompt curative instructions may be adequate. We can conceive of specific reference to prior unrelated criminal conduct which would be so offensive as to mandate a mistrial. In such a situation, immediate curative instructions would obviously be inadequate.

*Commonwealth v. Williams*, 470 Pa. 172, 179 n. 4, 368 A.2d 249, 252 n. 4 (1977). *See also Commonwealth v. Dean*, 300 Pa.Super. 86, 91, 445 A.2d 1311, 1313 (1982); *Commonwealth v. Green*, 287 Pa.Super. 220, 227, 429 A.2d 1180, 1183 (1981). Such evidence can only be said to strip a defendant of the presumption of innocence that is fundamental to our concept of a fair trial. *Commonwealth v. Laughman*, 306 Pa.Super. 269, 272, 452 A.2d 548, 549 (1982).

Consideration of the facts and evidence surrounding the instant case lead me to conclude that this is a case involving an alleged crime which would cause the jury to lose sight of the question before it—whether McEachin was guilty of the molestation of three other children. In the instant case, McEachin was accused of child molestation. From the witness stand, an obviously distraught mother announced that her son was molested at the school at which McEachin worked, and where the charges of molestation for which he was convicted arose. The clear inference for the jury was that McEachin had also molested her son. I fail to see how, in such an emotionally charged situation, any instruction from the trial judge could dissipate the aura of guilt that is bound to rise from those charges and envelop the appellant. In the climate which surrounds child abuse and molestation today, I would be hard pressed to accept the argument that any defendant could have been acquitted after such a statement. The *similarity* of the crime complained of by D.R.'s mother to the actual crimes for which appellant was tried *was* too inflammatory for its prejudicial effect to be cured by any instruction from the trial judge.

Further, I echo this court's concerns in *Commonwealth v. Durant*, 268 Pa.Super. 191, 407 A.2d 1311 (1979). In that case, a witness for the Commonwealth stated on cross-examination that appellant had been in jail before. The court found this to be prejudicial, and held that curative instructions from the trial judge could have in no way alleviated that prejudice. As in the instant case, the guilt or innocence of the appellant rested on his credibility; the statement of the witness destroyed that credibility and exhausted his conviction. *Id.*, 268 Pa.Superior Ct. at 194, 407 A.2d 1312. I also note that the *Durant* court found that the response of the witness could only have arisen from her desire to convict the appellant:

> The conduct of a fair trial cannot permit such testimony by a Commonwealth witness. It demonstrated her animosity towards the appellant. This is understandable, as the witness was the mother of the four-year old girl involved. However, the reference to appellant's prior criminal record is prejudicial to the presumption of innocence. We note that this case is distinguishable from *Commonwealth v. Whitman* ... and *Commonwealth v. Cannon.* The defense witnesses in those cases had no motive for intentionally testifying unresponsively and contra to the defendant's interests.

*Durant*, 268 Pa.Super. at 194, 407 A.2d at 1312 (citations omitted). I do not see that the reference to the prior conviction in that case could be any more prejudicial than the denunciation of McEachin by the mother of a small child here, although no mention was made of any prior conviction. Obviously the mother involved had a motive for making the statement in question. While the desire of a mother to aid in the conviction of a man she believes is responsible for the molestation of her child and other children is at least understandable, it is also, however, inimical to appellant's right to a fair trial.

In my opinion, appellant not only did not receive a perfect trial, he received far from a fair one. For this reason, I would grant appellant a new trial.