# Commonwealth v. Davis

*Judith Frankel Rubino, assistant district attorney,* for the commonwealth.

*A. Charles Peruto Jr.,* for defendant at trial.

*Daniel Preminger,* for defendant on appeal.

SAVITT, *J.,* June 22, 1989 — In the early morning hours of April 27, 1987 defendant, Edward Davis, went to the apartment of Renell Fields, the deceased, knocked on the door and was admitted by her. He then directed Ms. Fields, his estranged girlfriend and the mother of two of his children, to remove her clothes. After Ms. Fields complied, she and defendant went into the bedroom where, a short time later, defendant shot Ms. Fields once in the face and twice in the back of the head causing her death.

Approximately seven weeks prior to the shooting of Renell Fields, defendant, who had been searching for her for some time, forced his way at gunpoint into the car of Anthony Dates, an acquaintance of Ms. Fields, and forced him to drive to the home of

Florence and Sharon Saunders at 3125 North Sixth Street. Once inside the residence, defendant threw Florence Saunders to the floor, pointed the gun at her and demanded to know where the deceased was living. He then pointed the gun at Sharon Saunders, forced her to leave the house at gunpoint and was walking her toward his car when he was confronted by a police officer who called for assistance and eventually placed defendant under arrest. It was while he was on bail for that offense that defendant shot and killed Renell Fields.

The case was tried by this court without a jury from October 24, 1988 to October 28, 1988 and defendant was found guilty of first-degree murder, possessing an instrument of a crime, four counts of simple assault and two counts of kidnapping. Trial counsel filed post-verdict and post-sentence motions, was then permitted to withdraw and new counsel was retained by defendant. New counsel filed supplemental motions and all motions were heard and denied on April 27, 1989. This appeal follows.

## OPINION

Defendant's post-verdict and post-sentence motions have been timely filed and in support of them he argues that the pretrial court erred in permitting the consolidation of the kidnapping and homicide cases; that this court erred in admitting certain evidence; in ruling that child witness, six-year-old Donna Fields, the daughter of defendant and the deceased, was competent to testify, and that the closed-circuit television procedure used in this case violated his constitutional right of confrontation. Finally, defendant argues that the evidence was insufficient as a matter of law to support his con-

viction for first-degree murder and that his conviction for first-degree murder was contrary to the weight of the evidence.

There is no merit to defendant's claim that the pretrial court erred in consolidating the kidnapping and homicide charges against him for trial. It is well established that the consolidation of cases for trial is within the discretion of the court and will not be reversed absent an abuse of discretion or prejudice and clear injustice to the defendant. *Commonwealth v. Morris,* 493 Pa. 164, 425 A.2d 715 (1981); *Commonwealth v. Thomas,* 361 Pa. Super. 1, 521 A.2d 442, allocatur denied, 531 A.2d 1119 (1988). Under Pennsylvania Rule of Criminal Procedure 1127 offenses charged in separate indictments may be tried together if, (1) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so there is no danger of confusion; or (2) the offenses charged are based on the same act or transaction. See also, *Commonwealth v. DeHart,* 512 Pa. 235, 516 A.2d 656 (1986).

Given the facts of the instant case, the requirements of rule 1127 are clearly satisfied. The evidence showed that defendant committed the kidnappings and assaults in an effort to determine where the deceased was living and that they occurred approximately seven weeks prior to the time he found her and killed her. The earlier offenses were perpetrated in furtherance of defendant's plan to kill the deceased. Consolidation was proper and defendant is not entitled to a new trial on this basis.

Furthermore, because the kidnapping, assaults and murders were all part of the same transaction, evidence of them was not evidence of a crime other than the one for which defendant was being tried

and there is no basis for defendant's claim that the court erred by admitting evidence of these crimes.

With regard to the evidentiary issues, first, defendant was not prejudiced by the commonwealth's references to the Family Court protective order against defendant, because there was no testimony concerning either its content or the circumstances surrounding its issuance. Second, there was no testimony as to prior crimes of defendant. Earl Maples testified that defendant had "axed" the deceased's apartment in the months prior to her death. This limited testimony was relevant to show defendant's hostility toward the deceased and the court did not permit testimony concerning the specifics of the matter. Furthermore, the testimony that defendant "axed" the deceased's apartment was elicited by defense counsel himself on cross-examination. Third, it was not error to admit evidence of the deceased's reason for moving to Wilkes-Barre, Pennsylvania. This testimony was relevant to show the nature of the relationship between defendant and the deceased and to corroborate the evidence that defendant was searching for her.

Defendant argues that child witness Donna Fields was not competent to testify. This argument has no merit. It is well settled that the competency of a witness is presumed and the burden to show incompetency falls upon the party asserting it. *Commonwealth v. Riley*, 458 Pa. 390, 326 A.2d 384 (1974); *Commonwealth v. Hart*, 501 Pa. 174, 460 A.2d 745 (1983). When the witness is under 14 years of age the trial judge should be satisfied that the witness has:

(1) The capacity to communicate, including both an ability to understand questions and to frame and express intelligent answers.

(2) The mental capacity to observe the occurrence itself and the capacity to remember it so as to testify about it.

(3) A consciousness of the duty to speak the truth. *Commonwealth v. Hart, supra; Commonwealth v. McEachin*, 371 Pa. Super. 188, 537 A.2d 883 (1988).

Defendant here concedes that the witness Donna Fields demonstrated an understanding of her duty to speak the truth and an ability to understand questions and frame intelligent answers, but argues that she did not demonstrate either the capacity to observe the occurrence or to remember the event which was observed. This court does not agree. The court's observation of the witness' demeanor indicates that she was of above-average intelligence and possessed the ability to remember what had happened to her mother. Although she sometimes gave inconsistent answers, the witness demonstrated that she understood the questions, observed and remembered what had happened the night of the shooting, was not easily manipulated and could give relevant and intelligent answers to the questions put to her by counsel. Most important, despite defense counsel's thorough cross-examination, the witness consistently maintained that it was her father who came to the apartment the night of the murder and that she saw him by peeking through a partially open door. It is clear, therefore, that this child was competent to testify and defendant is not entitled to a new trial on this basis.

Defendant relies on *Coy v. Iowa*, _ U.S. _, 108 S.Ct. 2798 (1988) for the proposition that his confrontation rights were violated by the procedure followed by this court in permitting commonwealth witness Donna Fields to testify on closed-circuit

television.[1] This reliance is misplaced. In *Coy v. Iowa, supra,* the court held that a defendant's confrontation rights had been violated when a child witness was permitted to testify from behind a screen solely on the basis of the Iowa statute which created a legislatively imposed presumption of trauma and required no individualized finding concerning the need for special protection of child witnesses. The court did not hold that there were no exceptions to the defendant's right to face-to-face confrontation, but struck down the particular procedure used by the Iowa court and left for another day the question of whether any such exceptions based on other important interests do, in fact, exist. *Coy v. Iowa* at 2803. Thus, *Coy* does not mandate a new trial in the instant case, for it is the issue which the Supreme Court reserved for another day which was decided by this court at trial and is supported by this opinion today.

This court's decision in the case at bar is clearly distinguishable from the decision made by the Iowa court in *Coy.* The court's decision here has two bases. First, the decision was based on an individualized finding made only after counsel was appointed for the child, the child was examined by an independent psychologist and extensive hearings had been held concerning her ability to testify. Second, the decision rests not only on the finding that the child would be traumatized by testifying in the presence of her father, but also on a finding that she

---

1. In his brief defendant also implies that this court relied on the Pennsylvania statute (42 Pa.C.S. §5981) which provides for closed-circuit testimony by child witnesses for "good cause shown." This court's decision to permit Donna Fields to testify was based on its analysis of defendant's right of confrontation as interpreted by the U.S. Supreme Court and was in no way premised on the Pennsylvania statute.

would suffer such emotional distress as to be *unable* to reasonably communicate about what happened the night of the offense, a finding which is tantamount to a finding that the witness is unavailable.[2]

With regard to the first basis of this court's decision, the U.S. Supreme Court in *Coy* did not find that there could be no exception to the requirement of face-to-face confrontation. Rather, the court found that, in the absence of an individualized finding regarding the need for special protection of the child witnesses, the Iowa court's judgement could not be sustained by any conceivable exception.[3] These are not the circumstances of the case at bar.

The initial hearing on the commonwealth's motion to permit Donna Fields to testify on closed-circuit television was held on September 28, 1988. At that hearing Donna's maternal grandmother and Dr. Paul Viola, a psychiatrist, testified concerning the trauma being caused to her by the propsect of testifying against her father. Because the court was not satisfied that the testimony at this hearing established a sufficient basis to permit the child to testify by closed-circuit television, an attorney was appointed to represent the child, a further psychiatric report was ordered and the case continued until October 24, 1988. On that date Paula Lappe, Esq., Donna's court-appointed attorney, presented

2. This is not to say that this court was not concerned about the trauma caused to the child by having to testify in the presence of her father. However, everyone is traumatized to some degree by having to testify in the presence of the accused and this court did not believe that such trauma alone ws sufficient reason to abrogate defendant's right to face-to-face confrontation.

3. Defendant makes much of the fact that the child here was not herself the victim of the crime. This is a distinction without a difference. A child who saw her father shoot her mother could be just as traumatized as one who was herself the victim of sexual abuse.

the report of Dr. Frederick D. Breslin, the independent psychologist who evaluated Donna. Dr. Breslin's report indicated that the prospect of having to testify against her father had placed Donna under extreme stress, caused serious behavior problems and that the best interests of the child would be served by relieving her of the responsibility of having to testify against her father. Dr. Breslin was not, however, able to predict whether the presence of her father in the courtroom would cause Donna such emotional distress that she would be unable to communicate.

Because Dr. Breslin was unable to predict the child's inability to communicate in the presence of her father, she was actually called to testify at trial on October 25, 1988 with defendant present in the courtroom. The child was on the stand for an hour and a half with both her grandmother and the child advocate appointed as her attorney close by, but was unable to respond to questions concerning the shooting of her mother. On the basis of the previous psychiatric testimony, the psychological evaluation and its own observation of the child, this court concluded that testifying in the courtroom in the presence of her father resulted in such serious emotional distress that she was unable to reasonably communicate and granted the commonwealth's motion to permit her to testify on closed-circuit television. Thus, this court's decision was based on individualized findings with regard to Donna's ability to testify in the presence of her father.

With regard to this court's second basis for permitting Donna to testify on closed-circuit television, although the Supreme Court has held that the confrontation clause reflects a preference for face-to-face confrontation at trial, it has expressly recognized that this preference may be overcome in a

particular case if close examination of competing interests so warrants. *Ohio v. Roberts,* 448 U.S. 56 (1980); see also, *Chambers v. Mississippi,* 410 U.S. 284 (1973). In *Ohio v. Roberts, supra,* the court held that evidence in derogation of the accused's right to confrontation may be accepted where there is a finding that the witness is unavailable and that the statement offered from the witness bears adequate indicia of reliability. A lack of memory renders a witness unavailable. *Commonwealth v. Graves,* 484 Pa. 29, 398 A.2d 644 (1979); *Commonwealth v. Jones,* 344 Pa. Super. 420, 496 A.2d 1177 (1985).

Thus, in the case at bar the court's finding that Donna was unable to reasonably communicate in the presence of defendant was the equivalent to finding that she was unable to remember and was unavailable to testify within the meaning of *Ohio v. Roberts.* Furthermore, her testimony on closed-circuit television, which included defendant's opportunity to cross-examine her, provided for most of the aspects of confrontation which demonstrate the reliability of testimony and, therefore, satisfied the reliability requirement of *Roberts.* Accordingly, this court is satisfied that defendant's confrontation rights were not violated and he is not entitled to a new trial on this basis.

In reviewing the sufficiency of the evidence, the court is required to view the evidence, and all permissible inferences to be drawn therefrom, in the light most favorable to the commonwealth and determine whether the evidence is sufficient to prove defendant's guilt beyond a reasonable doubt. *Commonwealth v. Shaver,* 501 Pa. 167, 460 A.2d 742 (1983); *Commonwealth v. Ruffin,* 317 Pa. Super. 126, 463 A.2d 1117 (1983).

A careful review of the entire trial record in the light most favorable to the commonwealth reveals

that there is sufficient evidence to prove beyond a reasonable doubt that defendant is guilty of murder in the first degree.

A defendant may be given a new trial on the ground that the verdict is against the weight of the evidence even where the evidence is legally sufficient to sustain a guilty verdict. *Commonwealth v. Vogel,* 501 Pa. 321, 461 A.2d 609 (1983); *Commonwealth v. Bowermaster,* 297 Pa. Super. 444, 444 A.2d 115 (1982). The decision to grant or deny a motion on this ground is committed to the sound discretion of the trial court. *Commonwealth v. Pronkoskie,* 498 Pa. 245, 445 A.2d 1203 (1982); *Commonwealth v. Laing,* 310 Pa. Super. 105, 456 A.2d 204 (1983). A new trial should be awarded on the ground that the verdict is against the weight of the evidence as to shock one's sense of justice and to make the award of a new trial imperative. *Commonwealth v. Laing, supra.*

The record in the instant case discloses that the conviction is sustained by the weight of the evidence. Therefore, defendant's request for a new trial on this ground is without merit.

In the instant case, the verdict was clearly an alternative left to the court after the presentation of the evidence. Accordingly, the verdict was not contrary to law, see *Commonwealth v. Ashford,* 227 Pa. Super. 351, 322 A.2d 722 (1974), and defendant is not entitled to a new trial on this account.

Finally, defendant's claims that his rule 1100 rights were violated by the pretrial court and that he was deprived of a fair trial because the sperm found on the body of the deceased was not tested are totally lacking in merit and will not be discussed further.

For the reasons stated herein, defendant's motion for a new trial and arrest of judgment is denied.